Tin Adams v. The State.

No. 7349.   Decided March 14. 1923.

Rehearing denied June 29, 1923.

1.—Rape—Copy of Special Venire—Precept.

Where the contention was based on the fact that no precept to the writ of a copy of the special venire had been issued by the district clerk commanding the sheriff to make such service of a copy of the special venire, and it was admitted that the officer had served defendant with a true and certified copy of said special venire more than one day previous to the trial, and also that such service was not preceded by the issuance of the writ or precept, there was no reversible error. Following Luster v. State, 63 Texas Crim. Rep., 541; overruling Ollora v. State, 60 Texas Crim. Rep., 217.

2.—Same—Continuance—Motion for a New Trial.

Where the motion for a new trial apparently acted upon June 3, 1922, following the overruling of the continuance May 22, 1922, exhibited no affidavit of the absent witness stating any facts for a continuance the same was properly overruled.

3.—Same—Evidence—Other Transactions—Rule Stated.

That material evidence in a given case shows the commission of a separate offense will not suffice alone to reject it, and there was no error in admitting the testimony of prosecutrix that they stopped at a house and

got some whisky, and they took the girls out from their home and carried them away to debauch them, and that they carried said whisky to the room which the parties occupied.

**4.—Same—Evidence—Other Transactions.**

.   Upon trial of statutory rape, there was no error in asking prosecutrix whether she had not seen defendant engage in an act of intercourse with some other woman, and that she answered affirmatively before objection could be made, but the court did sustain the objection afterwards.

**5.—Same—Lewd and Lascivious Acts.**

Lewd and lascivious acts of one accused of criminal connection with a female at times and places other than that charged in the indictment may become material as aiding the proposition that in accord with the disposition to commit the particular act charged are such other acts and conduct of the accused. Following Henard v. State, 47 Texas Crim. Rep., 173, and other cases, and would therefore be admissible.

**6.—Same—Evidence—Declarations of Co-Principal.**

That defendant's co-defendant told prosecutrix in defendant's presence that he had registered the party at the hotel upon the night of the alleged rape as Adams and son and daughters, and that this was done on the defendant's instruction, was admissible in evidence.

**7.—Same—Evidence—Acts of Co-Conspirator—Rule Stated.**

Acts and declarations of co-conspirator in pursuance of the common design, though transpiring out of the presence and hearing of the one on trial, if occurring prior to the consummation of the common object, are admissible in evidence, and there was no error in admitting testimony that the co-conspirator gave the girl whisky from the effects of which prosecutrix became drunk.

**8.—Same—Evidence—Acts of Co-Conspirators.**

So also under the rule of conspiracy testimony of the fact that defendant took the father of prosecutrix away from the home at the time of the conspiracy and made him drunk.

**9.—Same—Evidence—Circumstantial Evidence.**

Upon trial of statutory rape there was no error in admitting testimony of the woman who kept the hotel where the parties stayed on the night in question, that the next morning she found in one of the beds in the room occupied by the four a pair of little girl's panties.

**10.—Same—Bills of Exception—Objections to Question.**

Objections to questions asked the defendant by the State, which were sustained, and which were not seriously reflective, do not call for a reversal.

**11.—Same—Age of Prosecutrix—Evidence.**

Testimony as to the age of the prosecutrix, when given by a witness from memory refreshed by consulting a record made by him, which record spoke facts stated to him in person by the mother of prosecutrix since deceased, was competent. Following Tull v. State, 55 Texas Crim. Rep., 61, and other cases, and it is not necessary that the records were in court.

**12.—Same—Evidence—Corroboration.**

Where defendant had attacked prosecutrix's testimony by proving statements made by her at variance with her testimony, proof by the State of

statements of prosecutrix similar to and corroborative of her testimony as given on the trial, was admissible.

### 13.—Same—Charge of Court—Limiting Testimony.

The exception to the court's charge for its limitation on the State's impeaching testimony of a defendant's witness is without merit.

### 14.—Same—Rehearing—Copy of Venire—Precept—Statutes Construed.

The purpose of Article 671 and Article 672 C. C. P. is that a true and authentic copy of the venire be in the hands of the accused in time for him to make such investigation of the proposed jurors as he thinks proper, and be prepared to pass upon them when called for examination, and a substantial compliance with the statute is sufficient.

### 15.—Same—Continuance—Motion for a New Trial.

Upon considering the entire record. as the trial judge was required to do in reviewing his action upon request for continuance, upon hearing the motion for a new trial, based upon such refusal, there was no reversible error.

### 16.—Same-Declarations of Prosecutrix—Bills of Exception

In the absence from the bill of exception of any explanation of the surroundings, complaint of the conduct of counsel for the State to ask prosecutrix if she had ever seen defendant have intercourse with any one else. cannot be considered on appeal; besides, such evidence may have been admissible under certain contingencies.

### 17.—Same—Evidence—Circumstances.

Upon trial of statutory rape, where defendant and his co-defendant had taken away two girls under the age of consent to a hotel to debauch them, and thereafter proceeded to another place with them, and there impressed upon the children that they must not divulge what transpired, there was no error to admit testimony that on the morning after they spent the night at the hotel they put the whisky which was left into the automobile and took it to the other place with them.

### 18.—Same—Evidence—Same Transaction.

Where the statement considered is in connection with the statement of facts, it shows plainly to relate to the same transaction about which prosecutrix had testified, and is therefore not hearsay.

### 19.—Same—Cross-Examination.

Where the court has already expressed its view upon the admission of testimony brought out on cross-examination with reference to the intercourse with another woman, it is not necessary to again pass upon that point.

### 20.—Same—Sufficiency of the Evidence.

Where, upon trial of statutory rape, the evidence is sufficient to sustain the conivction, there is no reversible error.

Appeal from the District Court of Marion. Tried below before the Honorable R. T. Wilkinson.

Appeal from a conviction of rape; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*Keeney & Dalby* for appellant.—On a question of sexual intercourse with third party, Norman v. State, 230 S: W. Rep., 991; Newman v. State, 213 id., 651; · Owens v. State, 39 Texas Crim. Rep., 391; Jenkins v. State, 60 id., 236; Wilkerson v. State, 60 id., 388.

*R. G. Sto*rey, Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Marion County of rape, and his punishment fixed at confinement in the penitentiary for life.

In a preliminary motion appellant asserted that he had been in jail continuously since his arrest and that he had not been legally served with a copy of the special venire drawn in his case. The contention was based on the fact that no precept or writ had been issued by the district clerk, as is provided in Article 671, C. C. P., commanding the sheriff to make such service. It was admitted that the officer had served appellant with a true and certified copy of said special venire more than one day previous to the trial, as is provided by Article 672, C. C. P.; and also admitted that such service was not preceded by the issuance of the writ or precept above referred to as provided in Article 671, supra. Appellant cites the case of Ollora v. State, 60 Texas Crim. Rep. 217. The point raised in that case was that the writ or precept issued under Article 671 was without seal, and the contention originally made in that case is much the same as the one now before us. In that opinion, however, it appears that the learned judge who wrote for the court was reasoning upon a mistaken hypothesis. We quote from that opinion:

"In this case there is no contention that the seal had in fact been affixed by the clerk when the process was issued, and it seems to us to permit it to be affixed, when objection is made, so as to relate back to the time of its original issuance, is to deny the appellant the right of service of copy of the venire under the safeguards, sanctions and formality of the law. The proper practice would have been to have postponed the case and to have directed the service of a copy of the venire properly attested by the clerk. The objection, it is true, is technical, yet the law gives the appellant, in express terms, the right to a copy of the venire under the seal of the clerk of the court from whence it is issued, and for us to deny this right is to say that we are wiser than the law and shall deny to the appellant a right which the law gives him."

From this statement it is plain that this court was reasoning about the matter as if *the copy of the venire served upon the defendant,* lacked the proper certificate of the clerk. This was not the error complained of by the appellant in that case and the two propositions

are fundamentally different. Examination of the authorities cited in said opinion (which are also cited here) further supports the conclusion that the usually clear, and logical mind of the writer of that opinion was reasoning from an unsound premise. Said authorities are civil cases and are in support of the proposition that a citation without the seal of the issuing clerk will not support a judgment by default. The omission of the seal of the issuing court from a citation to the defendant in a civil case, may well excuse him from answering; and the omission of the seal from an otherwise properly certified copy of a special venire, might well be set up as an excuse for not having taken steps to further prepare for trial in a capital case,—the failure of proper certification in either event affecting the validity of a document vitally touching the rights of the defendant. But neither in the Ollora case nor in the one now before us was, or is there any question as to the fact that the copy of the venire served upon the accused, was properly certified. As above stated, it is urged in this case that no precept at all was issued by the clerk under Article 671 C. C. P., commanding service of the copy of the venire by the sheriff, and in the Ollora case, supra, it was the contention that a precept issued by the clerk commanding such service bore no seal. From the reasoning and conclusion announced in said case and an examination of the authorities therein cited, we are led to believe it no authority for upholding appellant's contention in the instant case.

The whole purpose of those articles in our Code relative to venires is the securing of that fair and impartial jury equally the protector of him who is unjustly prosecuted, and of the public and society against him who would go unwhipped when he had offended. The sole aim of Articles 671 and 672 of our Code of Criminal Procedure is to compel that an authentic copy of the special venire authoritatively find its way into the hands of the accused at least one day before he is called upon to select from said venire his jury. The case of Luster v. State, 63 Texas Crim. Rep. 541, was decided a year after the decision in the Ollora case, supra. The question in the Luster case was identical with that now before us. A true copy of the venire was made and served on the accused; no precept was issued by the clerk directing such service. The opinion states:

"In our opinion, the record, on this question, clearly shows that this statute was substantially complied with and that the appellant, more than one day, in fact, more than two days, exclusive of the day of service and the day the trial began, was served actually and properly with a copy required by this law, and the court below did not err in not quashing the special venire on the grounds set up in the motion for that purpose."

This we think announces a correct rule, and in so far as the case

of Ollora v. State, 60 Texas Crim. Rep., 217, announces a contrary doctrine, it is overruled.

Appellant sought a continuance because of the absence of Mr. and Mrs. McKinley, Mr. and Mrs. Sanches, Mr. Chanler, Mrs. Carnahan, Mr. and Mrs. Robertson and Warren Honea. From the qualification of the court below to the bill of exceptions we gather that all of these witnesses were present at the trial except Chanler, Mrs. Sanches and Mrs. Robertson. Neither Mr. Sanches nor Mr. Robertson was placed on the stand as witnesses in behalf of appellant. In the application for continuance the testimony of each of these witnesses is stated as identical with that expected from their wives. The availability of such testimony at the hands of their husbands who were present and the declination of appellant to use same, would lead us to hold it ·proper to have refused the continuance because of the absence of the wives. The testimony of the witness Chanler would have been that he lived near prosecutrix for several years and knew her to be unchaste, and that for several years she used vulgar and indecent language and displayed her person in an unseemly and lascivious manner.. Mr. Branch cites many authorities in Sec. 312 of his Annotated P. C. in support of the proposition that an application for continuance must set out specific facts and not mere conclusions and general averments. Tested by this rule the allegations of the application as far as the witness Chanler is concerned, are not sufficient. No act, language, time, place or event is specifically attributed to this absent witness. The application for continuance was overruled May 22, 1922. The motion for new trial apparently acted upon June 3rd following, exhibits no affidavit of Chanler stating any facts to which he would testify had he been present. In our opinion the application for continuances was properly overruled.

Asserting . that same was immaterial, irrelevant to any issue, prejudicial and because it showed the commission of another offense, appellant objected to the following testimony from prosecutrix:

"I remember we stopped at Cookville and got some gasoline and then went on and stopped at an old man's house and got some whisky. I don't know whose house it was, but I know where it is. I don't know how much whisky we got—just got some whisky. The whisky was in some fruit jars. I don't know how many fruit jars it was in. I saw next morning. The place we stopped to get the whisky is between Cookville and Omaha."

If either of said objections had foundation, it fails to appear in the bill. The State's theory was that appellant and one Tinker, both grown men, took two young girls from their home and carried them through the country in an automobile to Atlanta, Texas, where they spent the night with them and debauched them, and that the next day the party went on·to Texarkana, where they were arrested.

Part of the State's case was that prior to the time of such defilement, the girls were given intoxicating liquor and were under its influence at the time. The getting of a quantity of liquor by appellants and Tinker and the carrying it with them on this journey and up to a room at the hotel, might well appear part of the means used to accomplish the object intended. There is nothing in the bill of exceptions showing that such evidence had no useful part in developing the crime. That material evidence in a given case shows the commission of a separate offense, will not suffice alone to reject it. What we have just said applies also to appellant's objection that said liquor was carried to the room occupied by the party at Atlanta on the night in question.

Complaint appears of the question to prosecutrix regarding her having seen appellant engage in an act of intercourse with some one else. It is stated in the bill of exceptions that this question was answered affirmatively before an objection could be made. It further appears that when objection was made the court promptly sustained same and withdrew the testimony from the jury. Under these facts we do not consider the matter of such materiality as to call for a reversal of the judgment. For all the information we derive from the bill of exceptions, proof of this fact might have had a significant bearing. The matter involved in the question and answer was not necessarily a crime on the part of appellant, nor of necessity a reflection on him in any way. This court can not speculate as to the surroundings and setting of matters objected to in trials, nor from conjecture reverse cases.

Lewd and lascivious acts of one accused of criminal connection with a female at time and places other than that charged in the indictment, may become material as aiding the proposition that in accord with the disposition to commit the particular act charged, are such other acts and conduct of the accused. Ths is especially true when the female in the case is of tender years. Henard v. State, 47 Texas Crim. Rep. 173; Barra v. State, 50 Texas Crim. Rep. 359; Battles v. State, 53 Texas Crim. Rep. 207; Banks v. State, 63 Texas Crim. Rep., 147; Clardy v. State, 66 Texas Crim. Rep., 351, 147 S. W. Rep., 570. Proof of lewd and lasvicious conversations of appellant with the prosecutrix prior to the time of the alleged intercourse and indecent proposals made by him to her, would also be admissible for the same reasons. This reasoning applies to appellant's bills of exception Nos. 8, 9, 17 and 18.

That appellant's codefendant Tinker told prosecutrix in appellant's presence that he had registered the party at the hotel in Atlanta, Texas, on the night of the alleged rape as "Adams and son and daughters," and that this was done under appellant's instruction, would be admissible against appellant. Branch's Ann. P. C., Sec. 64 for collated authorities. In appellant's testimony we also

observe that he said that he registered the girls as his children at said hotel. This same rule applies to statements made by Tinker to witnesses in the presence of appellant while they were in Texarkana, as appears from appellant's bills of exceptions Nos. 11 and 12.

As supporting its theory of an acting together between appellant and Ennis Tinker in taking the two Ray girls to Atlanta and then to Texarkana, and that the joint purpose of said parties was the defilement of said children, we deem it permissible for the State to show that on the afternoon of the day the party left together in a car to go on said trip, that Tinker, out of the presence of appellant, gave to said girls whisky from the effects of which prosecutrix herein became drunk. Authorities need not be cited upon the well settled rule that acts and declarations of coconspirators in pursuance of the common design, though transpiring out of the presence and hearing of the one on trial, if occurring prior to the consummation of the common object, are admissible in evidence.

So also of evidence of the fact that appellant took the father of prosecutrix away from home the same afternoon the party left Mt. Pleasant, and when they came back the father was drunk. The record discloses an attempt on the part of appellant to justify the taking of these two young girls away from home on this trip with himself and Ennis Tinker, on the proposition that it was with the knowledge and consent of their father. Appellant testified:

"I registered them as my children because I had told Ray that I would take care of them. Tom Ray wanted them to go with us and he was not drunk a bit when we left there. I don't know whether Ray had had a drink or not, I don't know about that."

The testimony that before they left with the girls appellant went away with Mr. Ray, their father, and came back presently with the father in an intoxicated condition, was pertinent to the proposition of his leaving home with them with or without the consent of their parent.

Mrs. Carnahan, who kept the hotel where the party stayed at Atlanta on the night in question, was allowed to testify over objection that the next morning she found in one of the beds in the room occupied by the four, a pair of little girl's panties. That the entire party spent the night in said room, was sworn to by appellant himself, he averring that he and Tinker occupied one bed and the two girls another. Mrs. Carnahan testified that she saw nothing wrong with either bed the next morning, nor does she claim to have observed anything wrong with the drawers found. This was the only testimony as to said drawers. Prosecutrix said that she did not know who she went to bed with, that she was drinking, but that during the night she was awakened three times by the appellant who on each occasion had intercourse with her, and when she awoke in the morning appellant was in bed with her. Maggie

Ray, sister of prosecutrix, swore that she saw appellant in bed with prosecutrix on that occasion. Neither gave testimony as to said drawers. As we view this testimony of Mrs. Carnahan it does not support the contention of appellant that it was hurtful to him in that it showed intercourse on the part of Tinker with Maggie Ray. The removal of undergarments at night might as well import an innocent as a wrong purpose. No one said that the condition of said garment reflected intercourse. No one said it was found in the bed occupied by Maggie Ray and Tinker, or by Tinker and appellant. We do not see the value of this evidence to the State, but can not find in it anything of harm to appellant or to unfairly affect his trial.

Appellant's bills of exception Nos. 24 and 25 present objections to questions asked appellant by the State, to which his objections were sustained. We find nothing in the asking of such questions so seriously reflective as to call for a reversal.

Testimony as to the age of the prosecutrix, when given by a witness from memory refreshed by consulting records made by him, which records spoke facts stated to him in person by the mother of prosecutrix, since deceased,—was competent. Tull v. State, 55 Texas Crim. Rep. 61; Donley v. State, 44 Texas Crim. Rep. 428; Sheppard v. State, 56 Texas Crim. Rep. 606. The fact that said witness had not brought to court the record by inspection of which he had refreshed his memory, would not justify the rejection of his testimony.

A number of bills of exception evidence appellant's objections to proof by the State of statements of prosecutrix similar to and corroborative of her testimony as given on the trial. Each of these bills is qualified by the learned trial judge by stating that appellant had attacked such witness by proving statements made by her at variance with her testimony. This action of the trial court is supported by all authorities.

The exception to the court's charge for its limitation on the State's impeaching testimony of defendant's witness McKinley, appears without merit.

While we have not discussed each one of the numerous bills of exception contained in the record, the point presented by each pertains to and is covered by conclusions herein announced.

Finding no error in the record, an affirmance is ordered.

*Affirmed.*

ON REHEARING.

June 29, 1923.

HAWKINS, Judge.—A true copy of the venire under certificate of the clerk and seal of the court was served upon appellant as provided by Article 672, C. C. P. The complaint is that no precept was is-

sued to the sheriff directing him to serve the copy as provided in Article 671, C. C. P. We have again reviewed the question at appellant's request. There is no doubt in our minds as to the soundness of our former opinion upon the point. The purpose of those articles is that a true and authentic copy of the venire be in the hands of the accused in time for him to make such investigation of the proposed jurors as he thinks proper, and be prepared to pass upon them when called for examination. The purpose of issuing process for witnesses is that they may be available at the trial. If the clerk should fail to issue process for witnesses requested by accused, but the sheriff in the absence thereof secures the presence at the trial of the witnesses wanted, accused would hardly be permitted to excuse himself for not using them because the officer in fact was without process to command their presence.

We have again examined the complaint based upon refusal of a continuance. Considering the entire record, as the trial judge was required to do in reviewing his action upon request for continuance, upon hearing the motion for new trial based upon such refusal, we are confirmed in our view that the learned trial judge committed no error in not granting a new trial upon that ground of the motion.

Counsel for the state asked prosecutrix if she had ever seen "defendant have intercourse with any one else," to which she replied in the affirmative. Upon motion the question and answer were withdrawn. Bill number six in which complaint of this matter is brought forward explains none of the surroundings, but presents only the question and answer. This bill was considered in the fourth paragraph of our opinion, and was disposed of alone on the recitals in the bill. When we go to the evidence we find the following statement of prosecutrix:

"One night we was out with Mr. Adams out in the country, near the Cooper place and Mr. Adams took hold of my arm and leg. That was out in the country and he turned off to the side of the road and Mr. Adams and me and my sister, Hellen, was along. When he took hold of my arm and leg, I don's know what he said. I don't know what he said to Hellen; but he told me to say what he done to that woman, he tried to get me to tell what he did and that was what he wanted to do to me. I won't tell what it was, I won't say what he said."

If appellant had in the presence of this girl had intercourse with some one else, and referred to it in the conversation detailed by prosecutrix, and was using that occurrence as an inducement to securing her consent to a like act with him it would not have been erroneous for the state to have proved the act of intercourse in her presence. If the question was asked in connection with the foregoing testimony of the girl it would have had a "significant

bearing,'' and doubtless that fact was in the mind of Justice Latti-more when he used the expression. When the facts of the instant case are properly understood in connection with the bill of excep-tion discussed we think no conflict will be found with the opinions in Haggart v. State, 77 Texas Crim. Rep., 270, 178 S. W. Rep., 330, Norman v. State, 89 Texas Crim. Rep., 330, 230 S. W. Rep., 991, Newman v. State, 85 Texas Crim. Rep., 556, 213 S. W. Rep., 651.

Complaint is made because we did not specifically discuss bill of exception number seven. It shows that prosecutrix testified that on the morning after they spent the night at Atlanta appellant and Tinker put the whisky they had with them the night before in the automobile and took it to Texarkana with them. Through the abundance of caution this testimony was withdrawn. Appellant as-serts that our reasoning in the third paragraph of the original opinion does not apply because the offense had already been committed. It must be borne in mind however that the journey was still in progress; that according to the state's evidence appellant was intoxicated when they reached Texarkana; that on the road and after they reached there appellant and Tinker were impressing upon the girls that they must not disclose what had transpired on the night before. Under this state of facts we cannot discover how the statement that they carried on with them the whisky could have been harmful to appellant and especially in view of the court's action.

We do not understand appellant's bill of exception number eigh-teen to reveal any hearsay statement to which Maggie Ray was per-mitted to testify. When considered in connection with the statement of facts it shows plainly to relate to the same transaction about which prosecutrix had testified as set out in the second paragraph of this opinion on rehearing. Maggie was present at the time, as was ap-pellant, and she was detailing what was said by him and prosecu-trix on that occasion as well as what he did. Maggie's name was Maggie Helen and Naomi (prosecutrix) referred to her sister as ''Helen,'' and Maggie, the witness, was the same party referred to as ''Helen'' in prosecutrix's evidence.

As requested, we have carefully examined bill number twenty-three. Appellant was asked upon cross examination if he had not carried a certain woman to the house where prosecutrix and her sister lived, and there had intercourse with her in prosecutrix's presence, and then later asked her to let him do with her as she had seen him do with the woman. These things appellant denied, and exceptions were reserved to the questions. Our views have already been expressed in paragraphs two and four herein, and a repetition is unnecessary.

Appellant has respectfully requested us to re-examine the entire statement of facts and his bills of exception to which our attention is directed in his motion for rehearing. The punishment which he

is condemned to suffer is severe and he should not be forced to undergo it unless a fair trial has been awarded him. After a careful re-examination of the facts and the complaints brought forward in his bills of exception we have failed to discover anything which would justify a disposition of the case other than an affirmance. The learned trial judge appears to have solved every question of law upon which he entertained the slightest doubt in favor of appellant. The point upon which Tinker's case (No. 7269) was reversed did not arise in the trial of appellant.

The motion for rehearing is overruled.

*Overruled.*

(Delivered June 29, 1923).